UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**COURTESY COPY**

FAIR HOUSING JUSTICE CENTER, INC.; LISA
DARDEN; CLAUDE JAY JONES; and ADRIENNE
WILLIAMS,

       Plaintiffs,

16 Civ. 8608 (KMK)(PED)

  v.

SETTLEMENT AGREEMENT
AND ORDER

ULSTER SAVINGS BANK,

       Defendant.

    WHEREAS, the Fair Housing Justice Center ("FHJC"), Lisa Darden, Claude

Jay Jones, and Adrienne Williams ("Plaintiffs") filed a Complaint on November 4, 2016,

against Ulster Savings Bank ("Defendant" or "Ulster Savings");

    WHEREAS, Plaintiffs alleged in the Complaint, among other things, that

Defendant discriminated against African-Americans seeking mortgage information, and

thereby violated the Federal Fair Housing Act, the New York State Human Rights Law, the

Suffolk County Human Rights Law, and the Civil Rights Act of 1866 on the basis of race;

    WHEREAS, Defendant and its mortgage specialists identified in the

Complaint each and all assert that they did not discriminate and otherwise deny the

allegations of wrongdoing and liability as set forth in the Complaint and, by entering into this

Agreement, do not admit any such allegations;

    WHEREAS, Defendant asserts that it has been and remains committed to fair

lending and fair housing laws and opposes discrimination;

1

WHEREAS, Plaintiffs and Defendant wish voluntarily to resolve the claims raised by Plaintiffs in the Complaint according to the terms set forth in this Settlement Agreement and Order ("Agreement"), to avoid the cost and uncertainty of litigation;

WHEREAS, Plaintiffs and Defendant have voluntarily agreed to the terms of this Agreement and jointly request that it be so-ordered by the Court, as indicated by the signatures appearing below, the Court's willingness to so-order this Agreement being a material condition of the parties' willingness to enter into it:

**IT IS HEREBY AGREED** by and between Plaintiffs and Defendant as follows:

## I.     DEFINITIONS

1.     Prospective Borrower: The term "Prospective Borrower" means a person who makes any inquiry about residential mortgages.

2.     Informal Inquiry: An "Informal Inquiry" is a request for information about residential loan products or residential loan terms by a consumer that does not involve a full application process that concludes in an actual loan.  An Informal Inquiry does not include generalized inquiries regarding rates or market trends without specific questions directed or targeted towards a specific consumer and/or his or her goals or finances, but it may include informal, yet specific inquiries that result in estimates or targeted information about loan terms or products, or in the creation of a profile and input of information recorded through Ulster Saving's loan origination software program.

3.     Mortgage Specialist: The term "Mortgage Specialist" means a licensed mortgage loan originator working on behalf of Ulster Savings (whether as employees, agents,

independent contractors or otherwise) to seek out, inform, and otherwise serve a Prospective Borrower.

## II.   TERM AND SCOPE OF AGREEMENT

4.   The obligations under this Agreement shall commence on the date this Agreement is approved by the Court ("Effective Date") and shall continue for a term of four (4) years from the Effective Date, unless otherwise stated below.

5.   Each Parties' respective benefits and obligations under this Agreement shall be binding on that Party and any of its respective owners, employees, agents, representatives, officers, assigns, subsidiaries, or successors in interest, unless otherwise specified.

## III.   SETTLEMENT PAYMENT AND DISMISSAL OF ACTION

6.   Defendant shall make the payments required by Paragraphs 7 and 11 of this Agreement (the "Settlement Amount") in full and final settlement and satisfaction of all Plaintiffs' claims including, but not limited to, any claims of entitlement to damages, costs, and attorneys' fees.

7.   Defendant shall pay Plaintiffs the sum of two hundred and seventy-five thousand dollars ($275,000.00).  The $275,000 payment is comprised of a $28,000 payment to each of the three individual plaintiffs, and a $191,000 payment to FHJC.

8.   The total Settlement Payment, shall be made payable to "Cuti Hecker Wang LLP as attorneys for FHJC et al." on behalf of all Plaintiffs.  Defendant shall deliver this payment to Cuti Hecker Wang LLP ("CHW"), 305 Broadway, Suite 607, New York, New York 10007, within thirty (30) business days of the Effective Date.

3

9.     Within three (3) business days after the execution of this Agreement, Defendant's counsel shall deliver to CHW a signed Stipulation and Order of Dismissal providing for dismissal of all claims against Defendant and for the Court to maintain jurisdiction of this action for the limited purpose of interpretation and enforcement of the terms of the Agreement.

10.    Within three (3) business days after the date Defendant pays the Settlement Amount described in paragraphs 7 and 11, counsel for Plaintiffs shall file the Stipulation and Order of Dismissal with the Court.

11.    Defendant shall pay Plaintiffs' attorneys fees in the total amount set out in the Parties' e-mail correspondence of August 4, 2017.  Except as expressly provided for in this Paragraph 11 or otherwise in this Agreement, each party shall bear its own attorneys' fees, litigation expenses, and costs.

## IV.    GENERAL NON-MONETARY TERMS

12.    As set forth throughout the "Whereas" clauses, Defendant denies any wrongdoing and asserts that neither it nor its Mortgage Specialists has engaged in any unlawful activity, and accordingly it shall continue its compliance with fair housing and lending laws; and specifically therefore:

a.  Defendant shall not engage in any act or practice that discriminates against any person in making available a residential mortgage because of race, including with respect to any offerings, descriptions, services or discussions with potential borrowers around purchase price or mortgage loan amounts or terms.

4

b. Defendant shall comply with all applicable fair housing and fair lending laws, including those articulated in the federal Fair Housing Act, the New York State Human Rights Law, the Suffolk County Human Rights Law, and the Civil Rights Act of 1866.

c. Defendant shall not fail or refuse to provide to any person information regarding the availability of residential mortgages or the application requirements, procedures or standards for the review and approval of such mortgages, or provide information that is inaccurate or different from that provided others regarding such mortgages, because of race.

d. Defendant shall not provide differing estimates of potential buying power, purchase price, and/or mortgage loan amounts, conditions or terms on the basis of race.

13.     Defendant shall not take any action which would coerce, intimidate, threaten, or interfere with any of the Plaintiffs, in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other people in the exercise or enjoyment of rights guaranteed by the federal Fair Housing Act and state and local fair housing laws pertaining to discrimination based on race, including on account of any Plaintiff participating in this action or the testing leading to this action.

## V.     SPECIFIC NON-MONETARY TERMS

14.     Defendant will adopt revised written procedures governing Informal Inquiries which will, at a minimum, specify that Informal Inquiries must be handled

5

consistent with fair housing and fair lending laws, and that employees are subject to discipline, including possible termination, for violation of those procedures. As is explained further in the subsections below, the revised procedures shall create a consistent approach to responding to Informal Inquiries, including without limitation the provision of written materials and the maintenance of certain records memorializing such interactions. The revised procedures shall be distributed to all individuals working in mortgage lending at Ulster Savings.  In particular:

a. Defendant will develop standard questions about borrower information, which Prospective Borrowers may answer orally or in writing as part of the Informal Inquiry process, provided, however, that Prospective Borrowers may refuse or opt-out of answering such questions, wholly or in part. Defendant shall maintain a record of the responses.

b. Defendant will adopt a procedure for using standard inputs (consistent with standard lending practices) to use in presenting loan products or loan terms to Prospective Borrowers as part of an Informal Inquiry when the Prospective Borrower does not request that different inputs or information be used.  If a Prospective Borrower provides only some inputs but not others, Defendant will still use the standard inputs developed in this paragraph for those inputs that the Prospective Borrower did not otherwise specify, or provide a uniform procedure for creating a standard approach to choosing any remaining, non-user provided inputs.  Defendant will

maintain a record of the information (including loan products or loan terms) that it presents to a Prospective Borrower considering possible loan products or possible loan terms as part of an Informal Inquiry.

c. Defendant will require that, when a Mortgage Specialist presents loan products or loan terms to a Prospective Borrower in response to an Informal Inquiry, the Mortgage Specialist create a record of the Prospective Borrower's name (if given), contact information (if given), the loan terms or loan products presented, and the date, time and method of the communication, either by entering such data into Defendant's loan origination software system, or if the loan origination software system is not used for a Particular Borrower, by maintaining copies of the record in paper or other electronic format.

d. To the extent that Ulster Savings provides pre-qualification letters or pre-qualification terms to Prospective Borrowers, it will develop a procedure setting out the information that must be provided for a borrower to be processed for a pre-qualification, and Defendant will state clearly on its website and through its brochure or written materials referenced in paragraph 16, the information that must be provided by the Prospective Borrower to seek a pre-qualification decision.

15.    Defendant shall create a procedure that, if a loan scenario worksheet is used, either in loan origination software or in hard copy form, during an in person or telephonic or electronic meeting with a Prospective Borrower, the Prospective Borrower will be offered a copy of that worksheet, unless the Borrower declines to take a copy. Copies of all written materials provided or offered to Prospective Borrowers shall be kept and maintained by Ulster Savings for a period of four (4) years, whether they were prepared using Defendant's loan origination software or in hard copy.

16.    Defendant will prepare or adopt a short brochure or written materials that a) provide information about Defendant's home mortgage products, as well as SONYMA and other government-sponsored programs; b) provide general, overview information about the home buying process, including basic homebuyer terminology (such as down payment, closing costs, mortgage insurance) and explain that first time homebuyer seminars are available; c) indicate that Defendant is committed to fair housing and fair lending; and d) state the minimum requirements for a Prospective Borrower to request pre-qualification, pursuant to paragraph 14(d) above. Defendant will instruct its Mortgage Specialists to ask all Prospective Borrowers whether they would like a copy of such brochure or written materials and provide a copy to the Prospective Borrower if they respond positively. Defendant will also make such information available on its website.

17.    Defendant will continue to ensure that the HUD fair housing logo and/or "equal housing opportunity" appear on Defendant's website, advertisements for residential real estate-related transactions, mortgage fact sheets and brochures, and other similar electronic and print materials regarding residential lending and will continue to display the federal Fair Housing Poster and similar posters for any applicable state and loan

8

housing discrimination law at its bank branches and loan offices in conspicuous places. Defendant will also continue to maintain on its website a summary statement of its fair lending policies, including any revisions thereto, pursuant to paragraphs 14-16. Defendant will make its Spanish translator function on its website more prominent for information regarding residential mortgages, including all webpages that provide information regarding loan product categories available for first-time homebuyers and information regarding how to contact a Mortgage Specialist.

18.     Defendant will offer four (4) home buying seminars per calendar year during the term of the Agreement, designed to target a broad range of prospective homebuyers, including those in majority-minority census tracts within the geographic regions serviced by Defendant, and which are to be held in specific locations chosen from the list that is attached as Exhibit A in a manner that considers geographic variety and maximizing participation. Defendant shall offer a financial incentive/benefit to those individuals who are first-time homebuyers, who attend such seminars, and who obtain a mortgage through Defendant, as follows: Defendant shall provide a non-transferrable $750 credit to each such individual that can be applied to closing costs, down payment, or post-closing payment assistance and allocated depending on the individual's preference and considering the loan program selected by the borrower and that program's eligibility requirements. Defendant shall work in good faith with FHJC and organizations that serve African-American populations in the relevant area in advance of conducting the seminar(s) in order to publicize them. Defendant shall notify FHJC thirty days prior to holding such seminars, and FHJC may attend such seminars and may take efforts to encourage potentially interested borrowers to attend such seminars. Defendant shall maintain records regarding the seminars, including

9

Defendant's efforts to advertise or market these seminars, who participated as presenters, how many people attended, and the location of the seminars. Defendant shall work with FHJC in good faith to increase attendance at such seminars in the event that there is low attendance.

19. Within 60 days of the effective date, Defendant agrees to incorporate into its advertising and social media plan, advertisements and posts depicting African-Americans appearing to meet with mortgage specialists, applying for mortgages or otherwise buying homes. Such plan shall include at least 30% of its advertising concerning or listing its mortgage lending services (i.e., 30% of its advertising concerning or listing its mortgage lending services shall include such depictions). Additionally, as part of its marketing plan, Defendant will include multiple ads periodically taken out in some of the publications detailed in Exhibit B. Nothing in this paragraph shall preclude additional advertising efforts and/or marketing or publication efforts made in connection with the home buying seminars.

20. Defendant agrees to work in good faith to allow FHJC to make a one-hour presentation at one of its annual executive and/or employee retreats within the first eighteen months of this Agreement.

21. Within 45 days of the Effective Date, Defendant will develop a procedure for all of its branches and loan offices, including without limitation the Newburgh location, to schedule future appointments for walk-in customers to meet with a Mortgage Specialist at that location or any other reasonable and convenient location requested by the customer, and Defendant will post in each branch or loan office and on its website information concerning the availability of this service. The procedure will also provide for

the posting in all of Defendant's locations and on its website that a customer can schedule an appointment with a Mortgage Specialist at any Ulster Savings location at mutually-agreeable times, and how to schedule such appointments. Defendant will provide to FHJC copies of the above-referenced material publicizing the appointment scheduling procedure. This paragraph shall not require Defendant's Mortgage Specialists to be present at any location in which no appointments have been scheduled.

22.     With respect to the revised procedures noted in paragraph 14 and 15 above and/or the brochure or written materials mentioned noted in paragraph 16 above, Defendant will provide the proposed new procedures and/or materials within 45 days of the Effective Date of this Agreement. Within 15 days of receiving such proposals, FHJC shall provide its revisions and/or recommendations to Ulster Savings. Defendant shall consider such revisions or recommendations in good faith, and within 15 days thereafter, Defendant shall provide the final materials.

23.     Defendant will require all of its employees involved in residential mortgage lending to review and be familiar with any revised policies and procedures adopted by Defendant in connection with the Agreement.

24.     This Agreement shall not be construed to: a) impact any policy or procedure of the Defendant that is unrelated to the subject matter of this Agreement; b) prevent Defendant from providing information concerning loan terms or loan products that are specifically requested by a Prospective Borrower; c) prevent Defendant from conducting an Informal Inquiry in accordance with a Prospective Borrower's individual needs or wishes as affirmatively raised by that Prospective Borrower; d) prevent Defendant from providing loan scenarios or proposed specific loan terms or products that are consistent with a

Prospective Borrower's expressed parameters or ability to repay a loan; e) prevent Defendant from providing estimates of loan amounts or loan terms that are consistent with reasonable and customary practices in the residential mortgage-lending industry; f) require Defendant to provide information to Prospective Borrowers that is inaccurate, inadequate or incomplete; or g) require Defendant to offer or participate in any particular loan program or to continue to offer any particular loan products or terms, *provided, however,* that no such procedures or actions result in a violation of this Agreement.

## VI.   RECORDKEEPING

25.    Defendant will maintain the following records throughout the term of this Agreement electronically or in paper format:

      a.  Home Mortgage Disclosure Act ("HMDA") data for the geographic region serviced by Ulster, categorized and identified by type of loan product for 1-4 family mortgages, including without limitation, SONYMA, Fannie Mae, and other types of home mortgages categorized as "conventional for purposes of HMDA reporting".

      b.  Written records described in Paragraphs 14(a)-(d), 15, and 18.

      c.  Documentation sufficient to show Ulster Savings communicated the requirements of Paragraphs 23 to its Mortgage Specialists.

      d.  Documentation sufficient to show Ulster Savings compliance with Paragraph 16, 17, 19, and 21.

26.    For the HMDA data described in Paragraph 25(a), defendant will provide FHJC with copies of the identified data once such materials are made public by the

FFIEC and are available to Defendant's regulators, including its state regulator. Nothing in this Agreement shall be deemed to require Defendant to provide FHJC with copies of or access to loan files which were or may be reportable under HMDA.

27.     For the records described in Paragraphs 25(b), Defendant will provide FHJC, upon ten (10) days' notice, an opportunity to inspect and copy the identified documents collected for the thirty (30) days preceding FHJC's written notice, or for an alternative period agreed upon by the parties.

28.     For the records described in Paragraphs 25(c)-(d), Defendant will provide FHJC, upon reasonable notice, an opportunity to inspect and copy the identified documents no more than once per year during the term of this Agreement.

29.     This Agreement shall, in all respects, be deemed to permit Defendant's full compliance with all federal and state consumer privacy protection laws now or hereinafter enacted, including, without limitation, the Gramm-Leach-Bliley Act and the provisions thereof concerning safeguarding consumer information (collectively "Privacy Laws"). If, however, FHJC receives any non-public personal information or personally identifying information as to any of Defendant's actual or potential customers ("Protected Consumer Information"), FHJC shall ensure that all such information be kept securely and confidentially, and shall not disclose any such information to any third party. Further, FHJC shall promptly notify Defendant in the event of a breach of any Protected Confidential Information provided to FHJC under the terms of this Agreement and shall take all steps necessary to mitigate such breach. To the extent any records subject to this Agreement contain Protected Consumer Information, Defendant shall be permitted to make such records available for inspection at its office but to prohibit copying of such records. Alternatively,

Defendant may, but is not required to, redact from any records provided to FHJC any Protected Consumer Information. The Parties shall work in good faith to permit FHJC's copying of particular materials in redacted form to the extent that FHJC determines such copies are required for enforcement of this Agreement. With respect to any filings with the Court, the Parties shall not file any document that includes or fails to redact any Protected Consumer Information.

30.     The parties have agreed to the language of a joint press release (per the e-mail exchange dated August 4, 2017), which shall be made publicly available not later than the time that this Agreement is submitted to the Court for approval. Both parties will post the press release on their website. Nothing in this provision shall dictate the precise words or statements any party may say or issue about the case after the date of the press release.

31.     If FHJC engages in compliance testing of Defendant that results in any concerns regarding compliance with this Agreement or otherwise, Plaintiffs will confer in good faith with Defendant concerning the results of and all facts associated with the implementation of the compliance tests. Nothing in this provision shall be deemed to require Plaintiffs to engage in further testing or investigation of Defendant or to indicate that Defendant believes that such testing or investigation is appropriate. Additionally, nothing in this provision shall require FHJC to share any information concerning third party complainant investigation files.

32.     Defendant and FHJC will each designate a principal point of contact for communications with the other during the term of the Agreement, and will inform the other in writing of any change in the name or contact information of such person within thirty

(30) days of such change.  Defendant's designee will also be tasked with the responsibility for coordinating Defendant's compliance with this Agreement internally at the Bank.

## VII.   RELEASES

33.    Plaintiffs hereby release, acquit, and forever discharge with prejudice, and subject to the terms of this Agreement, Defendant and all employees, parents, owners, shareholders, agents, trustees, board members, insurers, bond holders, subsidiaries and affiliated entities from any and all claims, demands, causes of action, or liabilities, at law or in equity, that any Plaintiff has arising from the allegations set forth or described in the Complaint in this action, whether known or unknown, including all claims for reasonable attorneys' fees and costs.

34.    Defendant hereby releases, acquits, and forever discharges Plaintiffs, with prejudice and subject to the terms of this Agreement, from any and all claims, demands, causes of action, or liabilities, at law or in equity, any and all liability arising from the allegations set forth or described in the Complaint in this action, whether known or unknown, including all claims for reasonable attorneys' fees and costs.

## VIII.  ADMINISTRATION OF AGREEMENT

35.    The United States District Court for the Southern District of New York shall retain jurisdiction to enforce the terms of this Agreement upon the filing of an appropriate motion by either party.

36.    The parties to this Agreement shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Agreement prior to filing a motion with the Court to enforce and/or modify this Agreement.

37.     If any Plaintiff succeeds in moving to enforce any aspect of this Agreement against Defendant due to Defendant's breach of this Agreement, then Defendant shall reimburse such Plaintiff for all costs reasonably incurred in connection with such motion, including without limitation reasonable attorneys' fees and the reasonable costs of any testing conducted by FHJC that is directly related to the breach at issue. However, no Plaintiff shall recover any fees or costs unless they have complied in good faith with the provisions of Paragraph 36 of this Agreement.

38.     Any correspondence relating to this Agreement may be sent to FHJC at its primary business address, which is currently 30-30 Northern Blvd, #302, Long Island City, New York 11101, to the attention of Fred Freiberg or its then-current Executive Director. Any correspondence relating to this Agreement may be sent to Ulster Savings Bank at its primary business address which is currently 180 Schwenk Drive, Kingston, New York 12401, to the attention of William C. Calderara, its President.

## IX.    SEVERABILITY

39.     If any provision of this Agreement is declared invalid or unenforceable by a court having competent jurisdiction, it is mutually agreed that this Agreement shall endure except for the part declared invalid or unenforceable by order of such court, unless the elimination of the invalid provision shall materially affect the intent of this Agreement. The parties to this Agreement shall consult and use their best efforts to agree upon a valid and enforceable provision that shall be a reasonable substitute for such invalid or unenforceable provision in light of the intent of this Agreement.

40.     This Agreement shall not be deemed to override or supersede any obligation imposed by Defendant by any banking or lending law, regulation, regulatory

16

guidance, or any action required by Defendant by a regulator with visitorial authority over the Defendant (collectively, "Lending Law"). To the extent any provision of this Agreement is or becomes inconsistent with a Lending Law, Defendant shall notify FHJC, and the parties shall work in good faith to ensure that the relevant provision is appropriately effectuated without violating any such Lending Law. In the event that there is no method by which the Agreement's provision may be effectuated without violating a Lending Law, the Parties may raise this issue with the Court for its resolution and order.

## X.   MISCELLANEOUS

41.   This Agreement shall be deemed to have been jointly drafted and no provision herein shall be interpreted or construed for or against any party because such party drafted or requested such provision, or this Agreement as a whole.

42.   This Agreement contains all the terms and conditions agreed upon by the parties hereto, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Agreement regarding the subject matter of the instant proceeding shall be deemed to exist, or to bind the parties hereto, or to vary the terms and conditions contained herein, provided, however, that the parties' correspondence clarifying the definitions set out in Section I of this Agreement may be introduced in the event of a dispute to prove the meaning of the terms set out therein.

43.   The parties expressly represent and warrant that they have full legal capacity to enter into this Agreement, that they have carefully read and fully understand this Agreement, that they have had the opportunity to review this Agreement with their attorneys and that they have executed this Agreement voluntarily, without duress, coercion or undue influence.

17

44.     This Agreement may be executed in any number of counterparts and each such counterpart shall be deemed to be an original.  For purposes of executing this Agreement, a document signed and transmitted by facsimile or e-mail shall be treated as an original document and have the same binding legal effect as an original signature on an original document.

THE REMAINDER OF THIS PAGE IS LEFT INTENTIONALLY BLANK.

AGREED TO BY THE PARTIES:

For: FAIR HOUSING JUSTICE CENTER, INC., *Plaintiff*

By: _____     Dated: _August 7___, 2017
    Fred Freiberg, FHJC Executive Director

_____     Dated: _____, 2017
Lisa Darden, *Plaintiff*

_____     Dated: _____, 2017
Claude Jay Jones, *Plaintiff*

_____     Dated: _____, 2017
Adrienne Williams, *Plaintiff*


For: ULSTER SAVINGS BANK , *Defendant*

By: _____     Dated: _____, 2017
    (Signature)

   _____
    (Print Name)


**AS TO FORM OF AGREEMENT ONLY:**

CUTI HECKER WANG LLP                KILPATRICK TOWNSEND & STOCKTON

By:_____          By: _____
    Mariann Meier Wang                     Joseph S. Dowdy
    Alice G. Reiter                        Ian Goldrich
    305 Broadway, Suite 607                Suite 1400, 4208 Six Forks Road
    New York, New York 10007               Raleigh, North Carolina 27609
    (212) 620-2600                         (919) 420-1718

*Counsel for Plaintiffs*                *Counsel for Defendant*

19

AGREED TO BY THE PARTIES:

For: FAIR HOUSING JUSTICE CENTER, INC., *Plaintiff*

By: _____       Dated: _____, 2017
    Fred Freiberg, FHJC Executive Director

    _____       Dated: __8/4_____, 2017
    Lisa Darden, *Plaintiff*

    _____       Dated: _____, 2017
    Claude Jay Jones, *Plaintiff*

    _____       Dated: _____, 2017
    Adrienne Williams, *Plaintiff*

For: ULSTER SAVINGS BANK , *Defendant*

By: _____       Dated: _____, 2017
          (Signature)

    _____
          (Print Name)

AS TO FORM OF AGREEMENT ONLY:

CUTI HECKER WANG LLP              KILPATRICK TOWNSEND & STOCKTON

By:_____       By: _____
    Mariann Meier Wang                 Joseph S. Dowdy
    Alice G. Reiter                    Ian Goldrich
    305 Broadway, Suite 607            Suite 1400, 4208 Six Forks Road
    New York, New York 10007           Raleigh, North Carolina 27609
    (212) 620-2600                     (919) 420-1718

    *Counsel for Plaintiffs*           *Counsel for Defendant*

19

AGREED TO BY THE PARTIES:

For: FAIR HOUSING JUSTICE CENTER, INC., *Plaintiff*

By: _____
    Fred Freiberg, FHJC Executive Director

Dated: _____, 2017

Lisa Darden, *Plaintiff*

Dated: _____, 2017

Claude Jay Jones, *Plaintiff*

Dated: August 5 , 2017

_____
Adrienne Williams, *Plaintiff*

Dated: _____, 2017

For: ULSTER SAVINGS BANK , *Defendant*

By: _____
        (Signature)

Dated: _____, 2017

_____
       (Print Name)

**AS TO FORM OF AGREEMENT ONLY:**

CUTI HECKER WANG LLP

KILPATRICK TOWNSEND & STOCKTON

By:_____
      Mariann Meier Wang
      Alice G. Reiter
      305 Broadway, Suite 607
      New York, New York 10007
      (212) 620-2600

By: _____
      Joseph S. Dowdy
      Ian Goldrich
      Suite 1400, 4208 Six Forks Road
      Raleigh, North Carolina 27609
      (919) 420-1718

*Counsel for Plaintiffs*

*Counsel for Defendant*

19

AGREED TO BY THE PARTIES:

For: FAIR HOUSING JUSTICE CENTER, INC., *Plaintiff*

By: _____          Dated: _____, 2017
     Fred Freiberg, FHJC Executive Director

_____              Dated: _____, 2017
Lisa Darden, *Plaintiff*

_____              Dated: _____, 2017
Claude Jay Jones, *Plaintiff*

_____              Dated:   8  /  7  , 2017
Adrienne Williams, *Plaintiff*


For: ULSTER SAVINGS BANK , *Defendant*

By: _____          Dated: _____, 2017
          (Signature)

_____
          (Print Name)


## AS TO FORM OF AGREEMENT ONLY:

CUTI HECKER WANG LLP                    KILPATRICK TOWNSEND & STOCKTON

By:_____           By: _____
     Mariann Meier Wang                     Joseph S. Dowdy
     Alice G. Reiter                        Ian Goldrich
     305 Broadway, Suite 607               Suite 1400, 4208 Six Forks Road
     New York, New York 10007             Raleigh, North Carolina 27609
     (212) 620-2600                        (919) 420-1718

*Counsel for Plaintiffs*                *Counsel for Defendant*

AGREED TO BY THE PARTIES:

For: FAIR HOUSING JUSTICE CENTER, INC., *Plaintiff*

By: _____          Dated: _____, 2017
    Fred Freiberg, FHJC Executive Director


_____          Dated: _____, 2017

Lisa Darden, *Plaintiff*

_____          Dated: _____, 2017

Claude Jay Jones, *Plaintiff*

_____          Dated: _____, 2017

Adrienne Williams, *Plaintiff*


For: ULSTER SAVINGS BANK , *Defendant*

By: _____          Dated: _____, 2017
    (Signature)


_____
    (Print Name)


**AS TO FORM OF AGREEMENT ONLY:**

CUTI HECKER WANG LLP                    KILPATRICK TOWNSEND & STOCKTON

By: *Mariann Wang*          By: _____
    Mariann Meier Wang              Joseph S. Dowdy
    Alice G. Reiter                 Ian Goldrich
    305 Broadway, Suite 607         Suite 1400, 4208 Six Forks Road
    New York, New York 10007        Raleigh, North Carolina 27609
    (212) 620-2600                  (919) 420-1718

*Counsel for Plaintiffs*                  *Counsel for Defendant*

19

AGREED TO BY THE PARTIES:

For: FAIR HOUSING JUSTICE CENTER, INC., *Plaintiff*

By: _____     Dated: _____, 2017
     Fred Freiberg, FHJC Executive Director

_____     Dated: _____, 2017
Lisa Darden, *Plaintiff*

_____     Dated: _____, 2017
Claude Jay Jones, *Plaintiff*

_____     Dated: _____, 2017
Adrienne Williams, *Plaintiff*

For: ULSTER SAVINGS BANK , *Defendant*

By: _____     Dated: _____8 / 11 /_____, 2017
     (Signature)
     William C. Calderara
     President and CEO
     (Print Name)

AS TO FORM OF AGREEMENT ONLY:

CUTI HECKER WANG LLP

By: _____
    Mariann Meier Wang
    Alice G. Reiter
    305 Broadway, Suite 607
    New York, New York 10007
    (212) 620-2600

*Counsel for Plaintiffs*

KILPATRICK TOWNSEND & STOCKTON

By: _____
    Joseph S. Dowdy
    Ian Goldrich
    Suite 1400, 4208 Six Forks Road
    Raleigh, North Carolina 27609
    (919) 420-1718

*Counsel for Defendant*

19

**IT IS HEREBY SO ORDERED** on this 30th day of August, 2017

HON. KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

**EXHIBIT A**

Dutchess County
- Poughkeepsie

Nassau County
- Baldwin
- Brookhaven
- Elmont
- Gordon Heights
- Hempstead
- Lakeview
- New Cassel
- Roosevelt
- Uniontown

Orange County
- Newburgh
- Middletown

Rockland County
- Spring Valley

Suffolk County
- Brookhaven
- Gordon Heights
- North Amityville
- Wheatley Heights
- Wyandanch

Sullivan County
- Monticello

Westchester County
- Elmsford
- Fairview
- Mount Vernon
- New Rochelle
- Peekskill
- White Plains
- Yonkers

**EXHIBIT B**

- New York Trend
- Hudson Valley Press
- BlackWestchester.com
- The Westchester County Press
- The Bilingual News
- Noticia Long Island
- La Tribuna Hispana
- La Voz
- El Sol News
- El Aguila
- El Clarion
- Puma Libre
- Westchester Hispano